## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| **ROBERT HARRISON and JULIANNE SPRINKLE**, <br> 602 Catesby Ct. SW <br> Leesburg, VA 20175, <br><br> *Plaintiffs*, <br><br> v. <br><br> **INTERNAL REVENUE SERVICE; CHARLES P. RETTIG, in his official capacity as Commissioner of Internal Revenue** <br> 1111 Constitution Avenue, N.W. <br> Washington, DC 20224, and <br><br> **UNITED STATES DEPARTMENT OF THE TREASURY; STEVEN MNUCHIN, in his official capacity as United States Secretary of the Treasury** <br> 1500 Pennsylvania Avenue, N.W. <br> Washington, D.C. 20220, <br><br> *Defendants*. | **Case No. 1:20-cv-828** |

## COMPLAINT

COME NOW Plaintiffs Robert Harrison and Julianne Sprinkle, by and through their

attorney, and allege as follows:

## NATURE OF THE ACTION

1.     This action for declaratory relief arises under the Administrative Procedure Act

("APA") 5 U.S.C. Section 553 and 5 U.S.C. Section 706. At issue is the lack of guidance

governing a participant's ability to transition to the lower penalty structure under the 2014
Streamlined Filing Compliance Procedure after being accepted into the 2014 Offshore Voluntary
Disclosure Program prior to June 28, 2014.

2.      The Plaintiffs Robert Harrison and Julianne Sprinkle non-willfully failed to
disclose a foreign financial account as required under U.S. law.

3.      Starting in 2009, the Internal Revenue Service ("IRS") announced a series of
offshore voluntary disclosure programs and initiatives to encourage individuals with unreported
foreign financial accounts to enter into one of these programs.

4.      The IRS warned of "dire" consequences for individuals with unreported foreign
financial accounts who did not make a voluntary disclosure through a sponsored offshore
voluntary disclosure program. *See* Statement from IRS Commissioner Doug Shulman on
Offshore Income (Mar. 26, 2009), available at https://www.irs.gov/uac/Statement-from-IRS-
Commissioner-Doug-Shulman-on-Offshore-Income. Speaking at the Voluntary Compliance
Update panel at the American Bar Association Section of Taxation meeting in Washington, D.C.
on May 8, 2010, IRS officials Ronald Schultz and Rick Raven explained that taxpayers were
either "in or out" of the offshore-targeted voluntary disclosure program and any other type of
disclosures are not in the program. Ronald Schulz, a senior advisor to the Deputy Commissioner
(services and enforcement), Tax-Exempt and Government Entities Division, and Rick Raven,
Deputy Chief of Criminal Investigation Division, explained that the IRS will not allow taxpayers
to become compliant through any other method such as amending tax returns. Schultz and Raven
explained that taxpayers not making a disclosure through a targeted voluntary disclosure
program may face the worst possible outcome, because non-compliant taxpayers will have

flagged their unreported foreign accounts for the IRS to review without any protection from criminal charges.

5.      The IRS' threatening statements made during the 2009 and 2010 calendar years certainly made it seem to US taxpayers with previously undisclosed foreign financial accounts that they had no choice but to enroll in the OVDP.

6.      The Plaintiffs heard the threats from the IRS and acted as directed. They applied for and were accepted into the 2014 Offshore Voluntary Disclosure Program ("OVDP"), one of the IRS' targeted offshore voluntary disclosure programs. Under terms of the 2014 OVDP, participants were required to amend their tax returns for the last eight years to include any previously unreported foreign source income. Participants were required to pay all taxes and interest on previously undisclosed foreign source income for eight years. Participants were also subject to accuracy related penalties, failure to timely pay penalties, and failure to timely file penalties. Participants such as the Plaintiffs were also subject to a 27.5 percent penalty (the Title 26 offshore penalty) on the highest aggregate undeclared foreign financial account during the last eight years. In exchange for participating in the 2014 OVDP, the IRS "may decide not to recommend criminal prosecution" and a significant reduction in civil penalties. In May of 2014, the Plaintiffs were accepted into the 2014 OVDP.

7.      The terms of the OVDP Penalty Framework were non-negotiable. However, participants were permitted to opt out of the OVDP's uniform penalty structure. Even though the OVDP permitted participants to opt out of the program's uniform penalty structure, individuals that opted out of the OVDP penalty structure faced a full IRS audit that could subject them to criminal sanctions and significantly greater civil penalties. The IRS stated that opting out would only be appropriate in a minority of cases. *See* I.R.S., Offshore Voluntary Disclosure Program

Frequently Asked Questions and Answers 2012, at No. 51 (June 26, 2012),

http://www.irs.gov/Individuals/International-Taxpayers/Offshore-Voluntary-Disclosure-Program-Frequently-Asked-Questions-and-Answers.

8.      On June 18, 2014, the IRS introduced a new Streamlined Compliance Procedures for taxpayers who certify that their failure to report foreign financial assets and pay all tax due with respect to those assets did not result from willful conduct on their part. Unlike the OVDP where each submission is reviewed by the IRS, under the Streamlined Procedures the IRS applies a regular audit selection process.

9.      Under the Streamlined Compliance Procedures, participants are subject to a 5 percent penalty on the highest aggregate account balance on their undisclosed account(s) for the three previous years of the last non-compliance.  The Streamlined Compliance Procedures was enacted by the IRS as a filing procedure for taxpayers that non-willfully or inadvertently failed to disclose foreign financial accounts. Unlike the OVDP, in the Streamlined Compliance Procedures, participants were only required to amend tax returns to disclose foreign source income for three years. Participants were also required to pay taxes and interest for these three years as compared to eight years through the OVDP. In addition, participants of the Streamlined Compliance Procedures were not subject to accuracy related penalties as were participants of the OVDP.  The Streamlined Compliance Procedures was designed for taxpayers that non-willfully or inadvertently failed to disclose foreign financial accounts.

10.     On June 18, 2014, the IRS announced that certain individuals who applied and were accepted to the OVDP could transition into the Streamlined Compliance Procedures favorable five percent penalty. These were known as the ("Transition Rules"). According to the Transition Rules, OVDP participants were required to receive approval from a committee to

transition to the favorable Streamlined Compliance Procedures five percent penalty. Other than stating that an OVDP participant must receive approval from committee to transition from the OVDP to Streamlined Compliance Procedures penalty structure, the IRS did not publish or promulgate any rules governing the "Transition Rules."

11.     The Plaintiffs requested transition from the OVDP penalty structure to the more favorable Streamlined Filing Procedures penalty structure. The IRS sent their case to a secret and clandestine committee that unilaterally and without reason rejected the Plaintiffs' transition to the Streamlined Filing Procedures penalty structure.

12.     Under the Transition Rules, applicants that non-willfully or inadvertently failed to disclose a foreign financial asset to the IRS and wished to make a voluntary disclosure to the IRS after June 18, 2014 prior to June 18, 2014 were treated far worse than the same or similarly situated individuals who decided to wait to disclose their previously unreported foreign financial accounts and assets.

13.     The Transition Rules were not enacted through proper notice-and-comment rulemaking. As a result, the Transition Rules constitute an arbitrary or capricious agency action which injured the Plaintiffs, who were subject to increased monetary payments, filing burdens, and strict review standards. Accordingly, Plaintiffs request that this Court find the Transition Rules arbitrary and capricious as applied to them and allow the Plaintiffs to transition from the OVDP to the more favorable Streamlined Compliance Procedures five percent penalty.

## JURISDICTION AND VENUE

14.     This Court has federal question jurisdiction under 28 U.S.C. Section 1331, and

this Court has authority to grant the relief requested under 5 U.S.C. Sections 702-706 and 28

U.S.C. Sections 2201, 2202.

15.     Venue is proper in this Court under 28 U.S.C. Section 1391(e)(1) because the

defendants are officers and agencies of the United States and reside in this district.

## PARTIES

16.     Plaintiff Robert Harrison is a United States citizen and resident of Virginia.

17.     Plaintiff Julianne Sprinkle is a United States citizen and resident of Virginia.

18.     Defendant Internal Revenue Service is an executory agency of the United States

within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. Sections 551 and

701, and a bureau of the United States Department of Treasury, located in Washington D.C.

19.     Defendant Charles P. Rettig is the Commissioner of the Internal Revenue Service.

He is being sued in his official capacity. He serves as the head of the IRS in Washington, D.C.

20.     Defendant Steven Mnuchin is the Secretary of the Treasury. He is being sued in

his official capacity. He serves as the head of the Treasury in Washington, D.C.

21.     Defendant United States of America is the federal government formed under the

Constitution of the United States of America with its capital in Washington, D.C.

## GENERAL ALLEGATIONS

22.     In 1970, Congress enacted what has commonly become known as the Bank

Secrecy Act ("BSA"), as part of the Currency and Foreign Transactions Reporting Act. This was

codified in Title 31 (Money and Finance) of the U.S. Code. The purpose of the BSA was to

prevent money laundering by requiring the filing of reports and the retention of records where

doing so would be helpful to the U.S. government in carrying out criminal, civil, tax, and regulatory investigations. One of the most important provisions of the BSA was Title 31 of the United States Code ("U.S.C.") Section 5314(a).

22. U.S.C. Section 5314(a) provides in relevant part that:

> The Secretary of the Treasury shall require a resident or citizen of the United States or a person in, and doing business in, the United States, to keep records, file reports when the resident, citizen, or person makes a transaction or maintains a relation for any person with a foreign financial agency.

23.     A careful reading of the statute indicates that it has two distinct requirements: 1) the filing of a Foreign Bank Account Report ("FBAR") and 2) the keeping and retaining of specific records related to the accounts listed on the FBAR informational return.

24.     These rules required any U.S. person that anytime during a calendar year that has a "financial interest" or "signature authority" or "other authority" in offshore "financial accounts" in the aggregate that exceeds $10,000 to disclose the account on an FBAR.

25.     Congress also authorized the Secretary of the Treasury to impose civil penalties for violation of 31 U.S.C. Section 5314. *See* 31 U.S.C. Section 5321(a)(5). Unless the violation is willful, the civil penalty cannot exceed $10,000. And no penalty is to be imposed if the violation is due to reasonable cause and the amount of the transaction (or the balance in the account at the time of the transaction) was properly reported. *See* 31 U.S.C. Section 5321(a)(5)(B).

26.     If, however, the violation is willful, the reasonable-cause exception does not apply, and the maximum penalty amount is, under more recent amendments, increased to the greater of: (i) $100,000; or (ii) 50 percent of either (a) the amount of the transaction, if the

violation involves a transaction, or (b) the balance of the account at the time of the violation, if the violation involves a failure to report the existence of an account or any identifying information required to be provided regarding an account. *See* 31 U.S.C. Sections 5321(a)(5)(C)-(D).

27.     The Secretary of the Treasury promulgated 31 C.F.R. Section 1010.350 that requires "[e]ach United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country" to report the relationship to the Treasury Department for each year in which the relationship exists. This is accomplished by filing a Report of Foreign Bank and Financial Accounts ("FBAR") each calendar year for which the person maintained one or more financial accounts exceeding $10,000 in the aggregate during the previous calendar year. *See* 31 C.F.R. Section 1010.306(c).

28.     Since the FBAR is not an IRS form, Congress determined that a somewhat similar form should be filed with tax returns. Effective for tax year 2011 and later years, Congress requires an information report, Form 8938, to disclose offshore financial accounts. The IRS may assess an additional annual penalty of $10,000 for failing to timely disclose a foreign financial account on a Form 8938.

**A. 2009 and 2011 Offshore Voluntary Disclosure Programs**

29.     The IRS has over time developed programs to allow taxpayers who failed to report offshore income and properly disclose offshore accounts on an FBAR to come into compliance. In 2009, in an effort to remedy perceived offshore tax evasion,  the IRS implemented a targeted Offshore Voluntary Disclosure Program with the stated aims of: 1) centralizing the processing of offshore voluntary disclosures; 2) resolving the cases in an organized, coordinated manner; 3) offering a uniform penalty structure; 4) making exposure to

civil penalties more predictable; and 5) ensuring that applicants are treated consistently and predictably.

30.     On March 23, 2009, the IRS implemented the 2009 Offshore Voluntary Disclosure Program (the "2009 OVDP").

31.     Under the 2009 OVDP, disclosing applicants were required to pay all unpaid taxes and interest, and accuracy related penalties or, if applicable, the failure to file and failure to pay penalties during the six year period covered by the voluntary disclosure, plus an additional miscellaneous "offshore penalty" equal to 20 percent of the highest offshore account balance (plus the highest value of foreign assets) during a six year period which extended from the 2003 to 2008 tax years. The "offshore penalty" was in lieu of all other penalties. At the conclusion of the 2009 OVDP, all participants were required to file an IRS Form 906. A Form 906 is a closing agreement.

32.     A closing agreement is a written agreement between an individual and the Commissioner of the IRS which settles or "closes" the liability of that individual with respect to any internal revenue tax for a taxable period.

33.     Closing agreements with the IRS are analyzed in a manner similar to contract law. Although closing agreements are governed by federal contract principles rather than state contract law, closing agreements under Internal Revenue Code Section 7121(a) "are contracts and generally are interpreted under ordinary contract principles."

34.     Federal courts can set aside closing agreements in cases of fraud, malfeasance, misrepresentation, or duress.

35.     The IRS issued guidance regarding the 2009 OVDP in the form of Frequently Asked Questions and Answers ("FAQs") on its website. The response to FAQ No. 35 provides

as follows: Voluntary disclosure examiners do not have discretion to settle cases for amounts less than what is properly due and owing These examiners will compare than what he would otherwise be liable for under existing statutes.

36.     On February 8, 2011 the IRS announced a second iteration of the OVDP, the 2011 Offshore Voluntary Disclosure Initiative (the "2011 OVDP"). As with the 2009 OVDP, participating applicants were required to pay back taxes and interest, but now for up to eight rather than six years, as well as accuracy related penalties, or, if applicable, the failure to file and failure to pay penalties. The 2011 OVDP increased the miscellaneous "offshore penalty" from 20 to 25 percent of the amount in the year with the highest aggregate account balance in the foreign bank accounts and the highest value of the offshore assets during the pertinent eight-year voluntary disclosure period.

37.     Under the 2011 OVDP, some applicants were eligible for a reduced 5 percent or 12.5 percent miscellaneous offshore penalty. As with the 2009 OVDP, all participants of the 2011 OVDP were requested to execute a Form 906 Closing Agreement.

**B. The 2012 Offshore Voluntary Disclosure Program**

38.     On January 9, 2012, the IRS announced the 2012 Offshore Voluntary Disclosure Program. (the "2012 OVDP"). The 2012 OVDP increased the miscellaneous offshore penalty to 27.5 percent. Specifically, under the 2012 OVDP, disclosing applicants paid a miscellaneous offshore penalty equal to 27.5 percent of the highest aggregate balance of foreign accounts and highest aggregate value of offshore assets during the prior eight years. The 5-percent or 12.5 percent miscellaneous offshore penalty remained in effect for a few applicants.

**C. The Streamlined Filing Compliance Procedures**

39.     In 2014, the IRS announced the Streamlined Filing Compliance Procedures for taxpayers who certify that their failure to report foreign financial assets and pay tax due with respect to those foreign assets was not a result of willful conduct. Under the Streamlined Compliance Filing Procedures, participants are subject to a 5 percent penalty on the highest aggregate account balance on their undisclosed account(s) for the three previous years of the last non-compliance. Participants of the Streamlined Procedures Filing Compliance were not required to execute a Form 906 closing agreement with the IRS.

**D. The 2014 Offshore Voluntary Disclosure Program**

40.     Concurrent with the expansion of the 2014 Streamlined Procedures, the IRS modified the 2012 OVDP and created a new program (the "2014 OVDP"). The 2014 OVDP required additional information from applicants applying to the program, increasing the miscellaneous "offshore penalty" percentage from 27.5 percent to 50 percent if it became public that the IRS or the Department of Justice was investigating a financial institution at which the applicant held an account or another party that was facilitating the applicant's offshore arrangement held an account or another party that was facilitating the applicant's offshore arrangement, and required applicants to submit account statements and prepay the offshore penalty at the time of the 2014 OVDP application.

41.     The 2014 OVDP eliminated the existing reduced miscellaneous offshore penalties of 5 percent and 12.5.

**E. Transition Rules Under the 2014 OVDP**

42.     Following the introduction of the Streamlined Filing Procedures and modifications to the OVDP, the IRS also set forth "rules" for applicants who want to move from the OVDP into the 2014 Streamlined Filing Procedures. These Transition Rules were set forth in the form of FAQs on the IRS website at: http://www.irs.gov/Individuals/International-Taxpayers/Transition-Rules-Frequently-Asked-Questions-FAQs (the "Transition Rules FAQs").

43.     The Transition Rules stipulated that certain applicants in the OVDP are provided "an opportunity to remain in the OVDP while taking advantage of the favorable penalty structure of the expanded streamlined procedures." Transition Rules FAQs at 1.

44.     The Transition Rules mandated that an applicant was deemed to be currently participating in the OVDP. An applicant was deemed to be currently participating in the OVDP if: 1) the applicant had entered an OVDP by submitting a voluntary disclosure letter and the required attachments before July 1, 2014 and 2) as of July 1, 2014, the applicant either a) remained in the OVDP but had not completed the OVDP certification process, or b) opted out of the OVDP but had not yet received a letter initiating examination.

45.     The Transition Rules required any applicant who requests transitional treatment to: 1) submit a written statement signed under penalty of perjury "certifying [her] non-willfulness with respect to all foreign activities/assets, specifically described the reasons for the failure to report all income, pay all tax, and submit all required information returns, including FBARs, and, if the taxpayer relied on a professional advisor and a summary of the advice;" and 3) pay any tax, interest, and any accuracy related penalties, failure to file penalties, and failure to pay penalties.

46.     The Transition Rules stipulated that the IRS will consider the applicant's request in light of all facts and circumstances of the applicant's case and will determine whether to incorporate the 2014 Streamlined Filing Procedure offshore penalty terms in the OVDP closing agreement. Transition Rules FAQs at No. 7.

47.     The IRS originally stated that "a taxpayer who qualifies for the (2014 Streamlined Filing Procedures) but who is already in the OVDP can withdraw from the OVDP and move to the (2014 Streamlined Filing Procedures)," but the IRS "would appreciate receiving correspondence from the taxpayer that details his intentions to do so." However, the Transition Rules then stated IRS examiners should review whether the applicant's certification of non-willfulness is complete and whether the available information is consistent with the certification. The IRS examiner must take an initial determination, and the examiner's manager and a technical advisor must concur with that determination. A central review committee may also review the determination; the decision of that committee is final and that participants do not have the ability to present their cases to that committee. Transition Rules FAQs, at No. 8.

48.     The Transition Rules did not provide any guidance on the criteria for whether an examiner's determination will be reviewed by the central review committee. More importantly, the Transition Rules did not provide the specific standards of review the central review committee was to utilize, who the members of the central committee were, what factors were considered during the review, or the guidelines utilized by the committee.

49.     Not only did the Transition Rules fail to provide adequate guidance regarding the central committee, the Transition Rules did not define the burden of proof necessary to determine willfulness.

50.     The Transition Rules also did not permit applicants to appeal the IRS'
determination of whether or not they qualify for transitional treatment. Transition Rules FAQs at
No. 8.

51.     The IRS never published in the Federal Register any notice of proposed
rulemaking with respect to the Transition Rules.

52.     The IRS never provided interested persons an opportunity to participate in
rulemaking with respect to the Transition Rules through submission of written data, views, or
arguments.

53.     The Transition Rules did not satisfy any exception to the APA's notice and
comment rulemaking requirement.

54.     The Transition Rules were referred to as "rules" by the IRS.

55.     These Transition Rules had the force and effect of law.

56.     The IRS did not publish any specific comments or feedback that it has considered
in promulgating the Transition Rules and the Transition Rules "central review committee."

57.     The Transition Rules do not satisfy the notice and comment rulemaking
requirements of U.S.C. Section 553. The Transition Rules are arbitrary, capricious, an abuse of
discretion, and otherwise contrary to law.


**THE PLAINTIFFS ATTEMPT TO ENTER INTO THE STREAMLINED FILING
PROCEDURES THROUGH THE TRANSITION RULES**


58.     In the early 2000s, Julianne Sprinkle was enlisted in the military. Julianne
Sprinkle and her husband Robert Harrison were stationed at Camp Darby, Italy.

59.     After Julianne Sprinkle was discharged from the military, Julianne Sprinkle and Robert Harrison believed that they would remain in Italy. Julianne Sprinkle and Robert Harrison retained the services of Rita Baldi, an Italian attorney, to advise regarding the financial implications of remaining in Europe.

60.     Julianne Sprinkle and Robert Harrison opened a financial account with United Bank of Switzerland ("UBS").

61.     Julianne Sprinkle and Robert Harrson decided to open an account with UBS because of the bank's stable reputation.

62.     Julianne Sprinkle and Robert Harrison funded the UBS account with Robert Harrison's lifetime previously U.S. taxed savings which was approximately $850,000. The Plaintiffs mistakenly believed the UBS account was not reportable in the United States.

63.     In April of 2014, Julianne Sprinkle and Robert Harrison took action to rectify their non-willful mistake and entered into the 2014 OVDP.

64.     The IRS assigned Revenue Officer Denise Soss to the Plaintiffs' OVDP matter.

65.     Shortly after the Plaintiffs entered into the OVDP, the Plaintiffs requested transition treatment pursuant to the Transition Rules. After an initial review of the Plaintiffs' facts and circumstances, Revenue Officer Denise Soss determined that the Plaintiffs qualified for the five percent penalty under the Transition Rules.

66.     In May 2017, the Plaintiffs were advised again by Revenue Officer Denise Soss that their request for transition treatment was rejected by the Central Review Committee.

67.     In May 2017, the Plaintiffs requested the same Central Review Committee to review their request for transition treatment. The Central Review Committee denied the Plaintiffs' request.

68.     On August 15, 2017, the IRS sent to the Plaintiffs a letter alerting them of their automatic removal from the OVDP. This letter warned the Plaintiffs if they were removed from the OVDP they would be subject to a full examination which could result in the assessment of catastrophic penalties.

69.     On February 14, 2018, the Plaintiffs received a second correspondence warning the Plaintiffs that the IRS intended to remove them from the OVDP unless they executed a Form 906.

70.     In response to the February 14, 2018 correspondence from the IRS, the Plaintiffs requested a manager's review of their case. On April 5, 2018, IRS Territory Manager, Albert Ju, informed the Plaintiffs and their attorney that they would be removed from the 2014 OVDP and audited unless the Plaintiffs executed the Form 906.

71.     The Plaintiffs believed that if they did not sign the Form 906, they would face such extreme penalties that they would lose all of their financial assets. In essence, the Plaintiffs believed they were offered a choice between signing the Form 906 or subjecting all of their assets and savings to seizure.

72.     The IRS' threats of severe civil penalties were so overpowering as to cause the Plaintiffs to needlessly execute Form 906.

73.     Believing they had no choice, under heavy duress by the IRS, on April 6, 2018, the Plaintiffs signed the Form 906. The Plaintiffs also attached a supplemental statement on the Form 906 stating that they did not renounce their constitutional rights and the Plaintiffs intended to seek redress.

74.     On April 6, 2018, the Plaintiffs paid the IRS $380,531.14 to satisfy the OVDP penalty. At approximately the same time the Plaintiffs paid $130,412.00 in taxes, penalties, and interest to the IRS.

**COUNT I**
**Transition Rules Violate APA 5 U.S.C. Section 553, 5 U.S.C. Section 706(2)(D)**

75.     Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

76.     The actions of the Defendants in promulgating the Transition Rules were contrary to the notice-and-comment rulemaking requirement of 5 U.S.C. Section 553 and without observance of procedure required by law under 5 U.S.C. Section 706(2)(D).

77.     The Transition Rules purport to have, and are treated as having, the force and effect of law, but are not the product of notice-and-comment rulemaking, are arbitrary and capricious, and are therefore invalid.

78.     The IRS has not published any specific comments or feedback that it has considered in promulgating the guidance related to any OVDP, the Streamlined Procedures, or the Transition Rules.

79.     The IRS changes, expands, or deletes the guidance in the form of FAQs on its website on its whim, without notice to the public, without public participation, and without any published or formal process.

80.     The IRS' interpretations of its rules regarding the Transition Rules have been shrouded in secrecy. As a matter of fact, the IRS has refused to provide any guidance as to how the agency determines the term "willfulness" and  qualifications for purposes of the Streamlined Procedures. The IRS has not even complied with the basic fundamental notice and comment rulemaking requirements required by law in these areas.

81.     The Transition Rules are arbitrary, capricious, an abuse of discretion, and otherwise contrary to law.

82.     The Plaintiffs have no adequate remedy at law.

83.     The actions of the Defendants in promulgating and enforcing the Transition Rules impose a harm on Plaintiffs that warrant relief.


## COUNT II
## Transition Rules Violate APA 5 U.S.C. Section 706(2)(A)


84.     Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

85.     Pursuant to 5 U.S.C. Section 706(2)(A), the Transition Rules are arbitrary, capricious, an abuse of discretion, and otherwise contrary to law.

86.     The actions of the Defendants impose a harm on Plaintiffs that warrant relief.


## COUNT III
## Violation of the Due Process Clause of the Constitution


87.     Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

88.     The Due Process Clause of the Fifth Amendment of the United States Constitution provides for safeguards against the denial of life, liberty, or property by the Government outside the sanction of law. *See* U.S. Const. Amend. V, Section 1.

89.     The Transition Rules do not provide any guidance on the criteria for whether an examiner's determination will be reviewed by the central review committee, what the specific standards of review are (whether by the examiner, the manager, technical advisor, or the

committee), what factors are considered during the review, what factors are controlling or any similar guidance.

90.     The Transition Rules do not describe the burden of proof necessary to determine willfulness.

91.     The Transition Rules do not allow applicants to appeal the IRS' determination of whether the applicant qualifies for transition treatment. *See* FAQ 8.

92.     The Transition Rules require applicants to prove their eligibility to transition from the OVDP penalty to the lower Streamlined penalty without any guidance.

93.     Plaintiffs have been adversely affected as a direct and proximate result of Defendant's violation of their Due Process rights under the Constitution.

**COUNT IV**
**Closing Agreement is Invalid**

94.     Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

95.     Plaintiffs signed the Form 906 Closing Agreement under duress.

96.     Plaintiffs were harmed as a direct and proximate result of Defendant's actions.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

A.     A Declaratory Judgment

     i.     Setting aside the Transition Rules as unlawful under 5 U.S.C. Section 706(2);

    ii.     Holding that pursuant to 5 U.S.C. Section 706(2)(A), the Transition Rules are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and are therefore invalid;

      iii.     Holding the Transition Rules did not comply with the notice-and-comment rulemaking requirement of 5 U.S.C. Section 553, were without observance of procedure required by law under 5 U.S.C. Section 706(2)(D), and are therefore invalid;

      iv.     Holding the Transition Rules violate the Due Process Clause of the United States Constitution;

      v.     Setting aside the Form 906 signed by the Plaintiffs on April 6, 2018; and a finding that the Form 906 signed by the Plaintiffs is invalid;

      vi.     Holding Plaintiffs may transition into the 2014 Streamlined Procedures five percent penalty;

B.     A refund of all money that Plaintiffs paid to Defendant through their participation in the OVDP's penalty structure.

C.     An award of attorneys' fees, costs, and expenses in this action; and,

D.     Such relief as the Court deems just and proper.


Date:  March 27, 2020          Respectfully submitted,

                           ROBERT HARRISON and
                           JULIANNE SPRINKLE,

            By Counsel:    /s/ David Ludwig
                           David Ludwig (D.C. Bar No. 975891)
                           DUNLAP BENNETT & LUDWIG PLLC
                           8300 Boone Boulevard, Suite 550
                           Vienna, Virginia 22182
                           Phone: (703) 777-7319
                           Fax: (855) 226-8791
                           dludwig@dbllawyers.com

                           Anthony V. Diosdi (FL Bar No. 490121)

(*pro hac vice* to be submitted)
Diosdi Ching & Liu, LLP
505 Montgomery St. 11th Floor
San Francisco, CA 94111
Phone: (415) 318-3990
Fax: (415) 335-7922
adiosdi@sftaxcounsel.com

*Counsel for Plaintiffs*