IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DISTRICT OF COLUMBIA

ROBERT HARRISON, *et. al*                )
                                          )   Case No. 1:20-cv-828
            Plaintiffs,                   )
                                          )
      v.                                  )
                                          )
INTERNAL REVENUE SERVICE, *et. al*        )
                                          )
            Defendants.                   )
_____ )

**REPLY IN SUPPORT OF THE UNITED STATES' MOTION TO DISMISS**

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT .................................................................................................1

II.  BACKGROUND ...................................................................................................................2

    a.   Plaintiffs incorrectly assert that the IRS lacked criteria for denying their request for Transitional Treatment ................................................................................................................................ 3

    b.   Plaintiffs repeatedly misstate that by denying their request for Transitional Treatment, the IRS made a "determination" that their disclosure failures were willful .................................................. 4

III. ARGUMENT .........................................................................................................................6

    a.   Plaintiffs waived their right to bring this lawsuit .......................................................................... 7

    b.   Plaintiffs remain subject to their Closing Agreement because they have not stated a claim for duress . 8

    c.   Plaintiffs have not stated a claim under the Administrative Procedure Act............................. 10

        i.   Plaintiffs' citation to *Bowen v. Massachusetts* does not alter the conclusion that a refund suit provides an adequate alternative remedy............................................................................................. 10

        ii.  Plaintiffs' newly asserted (and unpleaded) harms are not redressable in an APA suit ...................... 12

        iii. The Transition Rules are not "final agency action" ................................................................. 13

        iv.  Plaintiffs concede that there are no judicially manageable standards to review the IRS's decision to establish terms and procedures for its settlement programs ........................................................ 14

        v.   Plaintiffs have not meaningfully distinguished *Irritated Residents* ............................................ 15

    d.   Plaintiffs have not identified a property interest to support their Fifth Amendment Claim................. 17

IV. CONCLUSION.....................................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Am. Sec. Vanlines, Inc. v. Gallagher*,
  782 F.2d 1056 (D.C. Cir.1986) ................................................................................. 8
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 8
*Ass'n of Irritated Residents v. E.P.A.*,
  494 F.3d 1027 (D.C. Cir. 2007) ................................................................... 14, 15, 16
*Barris v. United States*,
  1997 WL 459914 (W.D. Pa. April 30, 1997) ........................................................... 9
*Beatty v. United States*,
  168 F. Supp. 204 (Ct. Cl. 1958) ............................................................................... 9
*Bedrosian v. United States of Am., Dep't of the Treasury*,
  912 F.3d 144 (3d Cir. 2018) ..................................................................................... 9
*Bennett v. Spear*,
  520 U.S. 154 (1997) ............................................................................................ 13, 16
*Bowen v. Massachusetts*,
  487 U.S. 879 (1988) ................................................................................................ 11
*Budik v. Ashley*,
  36 F. Supp. 3d 132 (D.D.C. 2014) ............................................................................ 6
*Citibank, N.A. v. London*,
  526 F. Supp. 793 (S.D. Tex. 1981) ........................................................................... 9
*Clark Cty. Bancorporation v. United States Dep't of Treasury*,
  No. CV 13-632 (JEB), 2014 WL 5140004 (D.D.C. Sept. 19, 2014) ...................... 11
*Clintwood Elkhorn Min. Co.*,
  553 U.S. ................................................................................................................... 10
*Cohen v. United States*,
  650 F.3d 717 (D.C. Cir. 2011) ................................................................................ 11
*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
  140 S. Ct. 1891 (2020) ............................................................................................ 16
*Fidelity & Casualty Co. v. United States*,
  490 F.2d 960 (Ct. Cl. 1974) ...................................................................................... 9
*Fla. Bankers Ass'n v. U.S. Dep't of the Treasury*,
  799 F.3d 1065 (D.C. Cir. 2015) ............................................................................... 8
*Foman v. Davis*,
  371 U.S. 178 (1962) .................................................................................................. 2
*Heckler v. Chaney*,
  470 U.S. 821 (1985) ................................................................................................ 14
*Humer v. I.R.S.*,
  Case No. 94-0982, 1995 WL 366032 (S.D. Fla. Feb. 17, 1995) .............................. 9
*Larson v. Northrop Corp.*,
  21 F.3d 1164 (D.C. Cir. 1994) .................................................................................. 6
*Marciano v. Shulman*,
  795 F. Supp. 2d 35, 41 (D.D.C. 2011) .................................................................... 17

*Maze v. Internal Revenue Serv.*,
   862 F.3d 1087 (D.C. Cir. 2017) .................................................................. 10, 12
*Moore v. United States*,
   No. C13-2063RAJ, 2015 WL 1510007 (W.D. Wash. Apr. 1, 2015) ........................ 9
*NB ex rel. Peacock v. District of Columbia*,
   794 F.3d 31 (D.C. Cir. 2015) ................................................................................ 17
*Palacios v. MedStar Health, Inc.*,
   298 F. Supp. 3d 87 (D.D.C. 2018) ......................................................................... 2
*Parker v. N. Carolina Agr. Fin. Auth.*,
   341 B.R. 547 (E.D. Va. 2006) ........................................................................... 8, 9
*Parsons v. United States Dep't of Justice*,
   878 F.3d 162 (6th Cir. 2017) ............................................................................... 12
*Royer v. Fed. Bureau of Prisons*,
   933 F. Supp. 2d 170 (D.D.C. 2013) ..................................................................... 15
*Starr Int'l Co., Inc. v. United States*,
   910 F.3d 527 (D.C. Cir. 2018) ............................................................................. 11
*U.S. Army Corps of Engineers v. Hawkes Co.*,
   136 S. Ct. 1807, 195 L. Ed. 2d 77 (2016) ........................................................... 16
*Wolverine Petroleum Corp. v. Comm'r of Internal Revenue*,
   75 F.2d 593 (8th Cir. 1935) .................................................................................. 8

**Statutes**

5 U.S.C. § 704 ........................................................................................... 5, 12, 16
5 U.S.C. §§ 702 ............................................................................................... 7, 13
26 U.S.C. § 7121(b) ............................................................................................... 8
26 U.S.C § 7422 ........................................................................................... 2, 4, 12
28 U.S.C. § 1346(a) ............................................................................................... 2
31 U.S.C § 5321 .................................................................................................... 5

# I.     PRELIMINARY STATEMENT[1]

Plaintiffs commenced this suit under the Administrative Procedure Act to (1) void Plaintiffs' Closing Agreement with the IRS; (2) compel the IRS to refund the previously collected taxes, penalties, and interest paid under that Closing Agreement; and (3) force the IRS to resolve Plaintiffs' substantial tax and penalty liabilities on more generous terms than those offered to Plaintiffs through the agency's leniency program, the Offshore Voluntary Disclosure Program ("OVDP"). Plaintiffs contend that the Closing Agreement was a product of duress (Count IV); that the IRS's procedures (the "Transition Rules") for triaging requests from OVDP participants for reduced penalties were procedurally (Count I) and substantively (Count II) invalid; and that these procedures violated the Fifth Amendment's guarantee of procedural due process (Count III).

The government moved to dismiss the complaint on the grounds that Plaintiffs (1) expressly waived their right to recover the tax and penalty assessments when they executed their Closing Agreement; (2) do not allege sufficient facts to support a claim that the Closing Agreement was a product of duress; (3) have not stated a claim under the APA, and (4) have not stated a claim under the Due Process Clause of the Fifth Amendment.

Plaintiffs' untimely response does not seriously contest the government's arguments. Instead, Plaintiffs attempt to recast their facial challenges to the Transition Rules as an as-applied challenge to the IRS's decision that Plaintiffs' tax and penalty liabilities should be resolved through OVDP (in the normal course) or an administrative examination (*i.e.*, audit), rather than through Transitional Treatment. Yet even if Plaintiffs had moved to amend their complaint to assert such a claim, the request would be futile. This suit is fundamentally a refund action because its obvious

---

[1] All page citations to Plaintiffs' Response in Opposition (or the Government's opening memoranda in support of its motion to dismiss) are cited to the page number in the CM/ECF header, rather than the page number shown at the bottom of the document.

purpose is to obtain a refund of the taxes, penalties, and interest that Plaintiffs paid the IRS.  The

APA does not waive sovereign immunity for suits for money damages, and the availability of a tax

refund suit under 28 U.S.C. § 1346(a)(1) independently precludes an APA claim. Further, because

Plaintiffs voluntarily waived their right to bring a refund action, it would also be futile to amend the

complaint to assert a refund claim under 28 U.S.C. § 1346(a) and 26 U.S.C § 7422.  Accordingly,

Plaintiffs should not be permitted to file a second amended complaint to raise these new allegations.

As this Court has recognized, "if an amendment would not survive a motion to dismiss . . .

amendment is futile and should be denied." *Palacios v. MedStar Health, Inc.*, 298 F. Supp. 3d 87, 90

(D.D.C. 2018) (Cooper, J.); *see also Foman v. Davis*, 371 U.S. 178 (1962).  Because the complaint still

fails to state a claim for relief, the Court should grant the government's motion to dismiss.

## II.      BACKGROUND

Plaintiffs' most recent descriptions of the mechanics of Transitional Treatment are

inconsistent with their Amended Complaint and (more importantly) the actual text of the IRS's

pronouncements (*i.e.*, the Transition Rules FAQ document), *available at* https://perma.cc/BWM8-

H3KX (visited September 2, 2020).[2]  Plaintiffs mischaracterize the existence and content of the

criteria that the IRS used to decide whether or not to grant a request for Transitional Treatment.

Plaintiffs also mischaracterize the effect, if any, of the denial of Transitional Treatment on the

resolution of a taxpayer's tax and penalty liabilities.  Because Plaintiffs' Response could create

misconceptions regarding whether they can state a claim for relief, two clarifications are in order.

---

[2] In the event that the Court's IT Security policies block the referenced hyperlink, the Transition
Rules FAQ can also be found at https://www.irs.gov/individuals/international-
taxpayers/transition-rules-frequently-asked-questions-faqs

a. **Plaintiffs incorrectly assert that the IRS lacked criteria for denying their request for Transitional Treatment**

Plaintiffs repeatedly contend that "[t]he Transition Rules did not provide any guidance on the criteria as to the factors the 'Central Review Committee' will consider during its review."[3] Pls.' Resp. at *10. This supposed lack of criteria is key to Plaintiffs' claims that the IRS's procedures were substantively invalid under the APA (Count II) and denied them their right to procedural due process (Count III).

Plaintiffs are simply incorrect that the Transition Rules did not include criteria for granting requests for Transitional Treatment. The Transition Rules state that Transitional Treatment would only be granted if "the available information is consistent with the taxpayer's certification of non-willful conduct" and the taxpayer is otherwise eligible. *See* Transition Rules: Frequently Asked Questions (FAQs), FAQ #7, #8; Am. Compl. ¶¶ 45, 47 (acknowledging requirement). Put another way, there must not be information inconsistent with the self-certification of non-willfulness.

Conditioning Transitional Treatment on the *absence* of information suggesting willfulness is in harmony with the overarching purpose of Transitional Treatment: reducing staff time spent auditing taxpayers who opted out of OVDP and for whom there was no indicia of willfulness.[4] Where, however, there was even a whiff that the taxpayer's conduct *might* have been willful, the

---

[3] At the Rule 12 phase, the United States assumes, *arguendo*, that Plaintiffs' request for Transitional Treatment was actually heard by a central review committee. *See* Transition FAQ #8 (a "central review committee *may* also review the determination" (emphasis added)).

[4] As previously explained, Gov't Mot. at *36-37, these procedures were designed to induce many of those taxpayers to remain within OVDP (rather than opting out and undergoing a full audit). *See generally IRS Answers Questions On Updated OVDP And Streamlined Filing*, TAX NOTES TODAY, 2014 TNT 120-9, Lexis Doc 2014-15503, (June 20, 2014) (quoting IRS officials explaining one reason for Streamlined Procedures and Transitional Treatment was "to reduce the number of individuals who enter into the OVDP with an intention at the outset to opt out of the civil settlement structure").

Transition Rules ensured that the IRS would resolve the taxpayer's liabilities through either OVDP (in the normal course) or an examination.[5]

Although Plaintiffs allege that their conduct was non-willful, Am. Compl. ¶¶ 2, 63, that is obviously very different from alleging that the IRS did not have any information that was inconsistent with their self-certifications of non-willfulness.  Nor could Plaintiffs amend their complaint to make such an allegation in good faith. The IRS informed Plaintiffs' former attorney that their certification of non-willfulness was inconsistent with information available to the IRS, including that Plaintiffs had directed UBS to send their Swiss bank account statements to an Italian attorney (rather than to the Plaintiffs' U.S. address).[6]

> **b. Plaintiffs repeatedly misstate that by denying their request for Transitional Treatment, the IRS made a "determination" that their disclosure failures were willful**

As the above-discussion makes clear, the denial of Transitional Treatment does not equate to a finding of willfulness, nor does it imply (much less determine) that the IRS will assess willful FBAR penalties under 31 U.S.C § 5321. Rather, it means that the IRS had at least some information that was inconsistent with the taxpayer's certification that their conduct had been non-willful, such that the taxpayer's potential liabilities should be resolved through either the OVDP process or

---

[5] It also bears noting that the Transition Rules did not induce anyone (including Robert Harrison and Juliette Sprinkle) to disclose their foreign accounts to the IRS.  Anyone eligible for Transitional Treatment was, by definition, *already* participating in OVDP.

[6] The fact that the IRS possessed information inconsistent with Plaintiffs' self-certification is not material to (and should not be relied upon to decide) issues raised in the government's motion to dismiss, including that (1) Plaintiffs voluntarily waived their right to challenge the assessments made through OVDP; and (2) a tax refund action brought in compliance with I.R.C. § 7422–rather than an APA suit or free-standing constitutional challenge–is the exclusive means for Plaintiffs challenge the Transition Rules and recover their taxes, penalties and interest. The government only provides such information as a reason for why it would be futile for Plaintiffs to seek leave to amend their complaint to allege that the IRS lacked *any* information that was inconsistent with their certification that their conduct was non-willful.

through an administrative examination.  Put simply, the decision to deny Transitional Treatment was

tentative and interlocutory nature, did not determine "rights or obligations," and was therefore not

final for the purposes of 5 U.S.C. § 704.

Nevertheless, Plaintiffs repeatedly conflate the denial of Transitional Treatment with a final

administrative determination that their failure to report their Swiss bank account had been willful

and would be penalized. The apparent purpose behind this strategy is to transform their facial

challenge to the Transition Rules into an as-applied challenge to the IRS's decision to deny Plaintiffs'

request for Transitional Treatment:

- "[T]he Transition Rules did not establish the burden of proof necessary to determine
  willfulness or non-willfulness; Pls.' Resp. at *10;

- "The 'Central Review Committee' determines whether a transition candidate acted willfully
  or non willfully in not disclosing a foreign financial account on an FBAR and a tax return,"
  Pls.' Resp. at *12.

- "Beyond the financial consequences of the 'Central Review Committee's' determination, the
  Plaintiffs suffered the stigma of being labeled a willful tax cheat." *Id* at *13.

- APA relief "will allow the Plaintiffs to determine why the 'Central Review Committee'
  determined they willfully failed to disclose their UBS account." *Id.*  at *14.

- "Without providing the Plaintiffs with any chance to present evidence, the 'Central Review
  Committee' determined the Plaintiffs committed an [sic] willful FBAR violation." *Id.* at *16.

- "the Transition Committee determined they willfully failed to report their UBS account on
  an FBAR." *Id.* at *19.

- The Transition Rules are a 'consummation' of the IRS's decision making process because it
  is determining whether or not a foreign account holder acted 'willfully' or 'non willfully' for
  purposes of assessing a penalty through the OVDP. *Id.* at *20.

- "The Transition Rules provide final decisions regarding FBAR penalties without the right of
  appeal." Id. at *21.

Plaintiffs' assertions are erroneous and reflect a misunderstanding of the OVDP program,

including Transitional Treatment. As noted above, the Transition Rules FAQs did not purport to

adjudicate a taxpayer's willfulness or liability for taxes, penalties, or interest.

It appears that Plaintiffs, recognizing that the Amended Complaint was subject to dismissal, are changing the basis for their claims. *See e.g.*, Am. Compl. ¶ 50 (citing Transition Rules FAQ at No. 8 for the proposition that "The Transition Rules also did not permit applicants to appeal *the IRS' determination of whether or not they qualify for transitional treatment.*"). The Court should reject what amounts to a backdoor attempt by Plaintiffs to amend their complaint through their response. *Budik v. Ashley*, 36 F. Supp. 3d 132, 144 (D.D.C. 2014) (citing *Larson v. Northrop Corp.*, 21 F.3d 1164, 1173–74 (D.C. Cir. 1994) for the proposition that "it is a well-established principle of law in this Circuit that a plaintiff may not amend [its] complaint by making new allegations in [the] opposition brief")).

Moreover, the de facto amendment is futile and does not save the Amended Complaint from dismissal for failure to state a claim. Because the relief that they seek is fundamentally money damages that are recoverable in a tax refund suit (where they can also challenge the Transition Rules), Plaintiffs cannot state a claim for relief under the APA. *See* 5 U.S.C. §§ 702 (APA review unavailable when seeking money damages); 704 (APA review unavailable where adequate alternative remedy available). Nothing in Plaintiffs' response changes that failure, not even alleging new facts about the nature of the agency action that they seek to review.

## III.   ARGUMENT

The government moved to dismiss the Amended Complaint on the grounds that Plaintiffs (1) expressly waived their right to recover the tax and penalty assessments when they executed their Closing Agreement; (2) do not allege sufficient facts to support a claim that the Closing Agreement was a product of duress; (3) have not stated an APA claim because (a) a tax refund suit provides adequate (if not complete) alternative relief; and (b) their challenge to the IRS's Transition Rules FAQ document is a challenge to non-final agency action and is otherwise a presumptively unreviewable act of enforcement discretion (not rulemaking); and (4) have not stated a procedural

due process claim under the Fifth Amendment because they have not identified a liberty or property interest upon which the IRS has intruded (and have not alleged why an administrative exam subject to judicial review is constitutionally insufficient).  As demonstrated below, Plaintiffs fail to mount a credible challenge to any of these arguments.

### a.  **Plaintiffs waived their right to bring this lawsuit**

The government's opening brief explained that by executing their Closing Agreement, the Plaintiffs expressly waived their right to challenge the IRS's assessments or seek a refund of the money paid to resolve their exposure to civil liability under Title 26 and Title 31.  *See* Gov't Mot. *21-23. Indeed, Plaintiffs' Closing Agreement stated:

> Taxpayers consent to the assessment and collection of the liabilities for tax, interest, additions to tax, and penalties [set forth in] this agreement, *waiving all defenses against and restrictions on the assessment and collection of those liabilities* . . . . *Taxpayers agree not to file a refund claim* for the underlying tax, penalties, and interest for any amount that relates to the underreported income described in this closing agreement, for any years subject to this closing agreement, *on any grounds*.

Gov't Mot. Ex. A at ¶ 9 (emphasis added).

Without citing any legal authority, Plaintiffs respond that the Closing Agreement did not waive their APA claims because "Plaintiffs are not contesting the taxes and penalties paid through the OVDP . . . Rather, the Plaintiffs are challenging the OVDP process."  Pl's Resp. *18.  The Court should reject plaintiffs' argument, which fails to address the exceedingly broad language in the Closing Agreement and the fact that such an agreement is, by statute, *final and conclusive*.  26 U.S.C. § 7121(b).

Notwithstanding the fact that the Amended Complaint carefully avoids mentioning § 1346(a)(1), it is disingenuous for Plaintiffs to contend that this suit is about anything other than contesting the taxes and penalties paid through OVDP.  Indeed, the Plaintiffs specifically ask for a return of the money that they have paid in their prayer for relief.  And even absent such an explicit

request, the finality enshrined in 26 U.S.C § 7121(b) demands that the Court construe the Closing Agreement as waiving *all* claims made for the purpose of recovering the tax and penalty assessments at issue here.  *See* § 1346(a)(1); *see generally Wolverine Petroleum Corp. v. Comm'r of Internal Revenue*, 75 F.2d 593, 595 (8th Cir. 1935) (purpose of § 7121(b) is to bar future suits brought for the purpose of obtaining refund). To hold otherwise would run contrary to the Artful Pleading doctrine and the D.C. Circuit's admonition that "nifty wordplay" is insufficient to transform a tax claim into an APA suit. *Cf. Fla. Bankers Ass'n v. U.S. Dep't of the Treasury*, 799 F.3d 1065, 1070 (D.C. Cir. 2015) ("plaintiffs cannot evade the Anti–Injunction Act by purporting to challenge only the regulatory aspect of a regulatory tax")(Kavanaugh, J.)).

> **b.  Plaintiffs remain subject to their Closing Agreement because they have not stated a claim for duress**

The government's opening brief explained that Plaintiffs had not stated a claim for duress because the Amended Complaint (1) fails to allege that the IRS made an improper threat and (2) fails to allege how opting out of OVDP and allowing their case to be resolved through an administrative exam (subject to judicial review) was not a reasonable alternative to the Closing Agreement.  Gov't Mot. at *22-25 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Am. Sec. Vanlines, Inc. v. Gallagher*, 782 F.2d 1056, 1060-61 (D.C. Cir.1986); *Parker v. N. Carolina Agr. Fin. Auth.*, 341 B.R. 547, 554 (E.D. Va. 2006)).

In response, Plaintiffs assert that "the IRS pressured innocent violators into paying them far more in penalties than they should have owed under law," Pls' Resp. at *15-16.  Plaintiffs fail, however, to identify how the IRS effected such "pressure," other than by communicating that the natural consequence of rejecting the Closing Agreement was for their case to be resolved through the administrative examination process (subject to judicial review).  At base, Plaintiffs are simply arguing that they signed the Closing Agreement because they were concerned that undergoing an examination could result in the IRS determining that Plaintiffs' conduct warranted assessing more in

8

penalties than would be assessed under the Closing Agreement. Yet Plaintiffs fail to acknowledge that it was Congress–not the IRS–that authorized substantial civil and criminal penalties against taxpayers who willfully fail to disclose their foreign financial accounts. A fear that the IRS might assess a congressionally authorized penalty, without more, does not constitute an improper threat and cannot state a claim for duress as a matter of law. *See generally Beatty v. United States*, 168 F. Supp. 204, 206 (Ct. Cl. 1958); *Humer v. I.R.S.* Case No. 94-0982, 1995 WL 366032, at *4 (S.D. Fla. Feb. 17, 1995) ("The only 'threat' made by the Internal Revenue Service was to collect plaintiff's delinquent taxes by levy, which it is authorized to do").

Further, Plaintiffs fail to articulate why the administrative examination process (subject to judicial review) was not a reasonable alternative to the Closing Agreement. Plaintiffs' failure is unsurprising, because undergoing a full IRS examination (subject to judicial review) cannot constitute duress as a matter of law. It is well-established that a "threat to exercise one's legal rights is not duress." *Fidelity & Casualty Co. v. United States*, 490 F.2d 960, 965-66 (Ct. Cl. 1974) (the IRS' statement that it intended to pursue its legal remedies in order to collect overdue taxes from a delinquent taxpayer cannot be considered duress); *Barris v. United States*, 1997 WL 459914 (W.D. Pa. April 30, 1997) (same); *accord Citibank, N.A. v. London*, 526 F. Supp. 793, 804 (S.D. Tex. 1981) ("Threats to resort to . . . legal remedies does not constitute duress."); *accord Parker* 341 B.R. at 554 ("[b]eing advised of the natural and probable consequences of one's actions is not duress.").

In sum, Plaintiffs were not forced to sign their Closing Agreement. Had they withdrawn from OVDP, the IRS would have conducted an examination. If at end of the administrative process the IRS assessed penalties against the Plaintiffs for willfully failing to disclose their foreign accounts, Plaintiffs could have sought an administrative appeal and, failing that, paid a portion of the FBAR penalty assessment and sought judicial review. *Bedrosian v. United States of Am., Dep't of the Treasury*, 912 F.3d 144, 148 (3d Cir. 2018); *cf. Moore v. United States*, No. C13-2063RAJ, 2015 WL 1510007, at

*11 (W.D. Wash. Apr. 1, 2015) ("Even as to the 2005 penalty that the IRS assessed without an opportunity for pre-deprivation review, the availability of both the opportunity to contest that assessment in the administrative 'appeal' and to obtain later judicial review satisfies due process."). As the government previously observed, only Plaintiffs and their former attorney know why they did not avail themselves of these alternatives to the Closing Agreement.

### c.   Plaintiffs have not stated a claim under the Administrative Procedure Act

In its opening brief, the government demonstrated that Plaintiffs had failed to state a claim for APA relief because (1) Plaintiffs had an adequate alternative remedy (a refund action) in Court; (2) the Transition Rules are not "final agency action;" and (3) the IRS's decision to establish procedures for settling civil claims through a leniency program like OVDP is committed to agency discretion and thus presumptively unreviewable under the APA. Plaintiffs' response does not meaningfully address these arguments.

#### i.   Plaintiffs' citation to *Bowen v. Massachusetts* does not alter the conclusion that a refund suit provides an adequate alternative remedy

The obvious purpose of this lawsuit is to recover the tax and penalty assessments to which Plaintiffs consented (and paid) when they signed their Closing Agreement. The government's opening brief argued that because Plaintiffs can seek such relief through a refund action, Plaintiffs are precluded from proceeding under the APA relief. *See* Gov't Mot. at *19-21; 26-28 (citing 5 U.S.C. § 704 (no action available under APA unless there is "no other adequate remedy in a court"); *Maze v. Internal Revenue Serv.*, 862 F.3d 1087, 1093 (D.C. Cir. 2017) (refund is adequate alternative remedy).[7] And because Plaintiffs are seeking money damages in the form of a refund suit, Plaintiffs

---

[7] Because Plaintiffs have not set forth the allegations necessary to state a refund claim in compliance with 26 U.S.C. § 7422 (*e.g.*, administrative claim for refund, denial), the government contended that this Court should dismiss the complaint for lack of jurisdiction.  *See* Gov't Mot. at * (citing *Clintwood Elkhorn Min. Co.*, 553 U.S. at 12).

cannot rely on § 702's waiver of sovereign immunity. 5 U.S.C § 702 (waiving sovereign immunity for suits seeking "relief other than money damages").

Plaintiffs do not deny that they seek to recover the money that they paid to resolve their tax and penalty assessments. Instead, Plaintiffs respond that APA relief is nevertheless available because they "are seeking declaratory relief stemming from the non-transparent, arbitrary and capricious manner in which [the IRS] administered its transition rules." Resp. at *6. In Plaintiffs' view, this means that "the fact that the Plaintiffs are demanding a return of their property (along with other relief) does not make this case about money so as to prevent the Plaintiffs from proceeding with suit under the APA." Resp. at *5-6 (citing *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988)). Plaintiffs also describe as "illusory" the government's contention that plaintiffs could have challenged the Transition Rules as "arbitrary and capricious" within the context of a tax refund suit. Pls' Resp. at *11. As explained below, Plaintiffs' arguments are foreclosed by binding decisions of this circuit.

Plaintiffs' reliance on *Bowen* is misplaced. *Bowen* was a case in which the availability of *prospective relief* was essential to the outcome. *Bowen*, 487 U.S. at 905. By contrast, Plaintiffs here would have no need to revise the Transition Rules once they receive a refund for the difference between what they paid under their Closing Agreement and what they would have paid under Transitional Treatment. That makes this case a paradigmatic refund suit. *See Starr Int'l Co., Inc. v. United States*, 910 F.3d 527, 536 (D.C. Cir. 2018). And as the D.C. Circuit has made clear: "In the tax context, the only APA suits subject to review would be those cases pertaining to final agency action unrelated to tax assessment and collection." *Cohen v. United States*, 650 F.3d 717, 733 (D.C. Cir. 2011) (*en banc*); *cf. Clark Cty. Bancorporation v. United States Dep't of Treasury*, No. CV 13-632 (JEB), 2014 WL 5140004, at *9 (D.D.C. Sept. 19, 2014) ("At the end of the day, Clark County wants tax money from Treasury Defendants, and the congressionally specified avenue to recover such sums is more than adequate to redress the wrongs it alleges.")

Little need be said regarding Plaintiffs' argument that they would be unable to challenge the Transition Rules in a refund suit beyond noting that the D.C. Circuit expressly rejected it in *Maze*, 862 F.3d at 1093 n.6, and that Plaintiffs do not mention the *Maze* decision in their Response. *See Maze*, 862 F.3d at 1093 n.6 ("The plaintiffs worry that, in a refund suit, they could challenge only the amount of their tax liability, not the Transition Rules themselves. . . . We disagree and note the IRS's acknowledgment at oral argument that the plaintiffs may indeed challenge the Transition Rules in a refund action.").

### ii. Plaintiffs' newly asserted (and unpleaded) harms are not redressable in an APA suit

In an attempt to maintain their APA claims, Plaintiffs' response raises new, unpleaded harms in the form of (1) "the stigma of being labeled a willful tax cheat," Pls' Resp. 13; and (2) "attorneys' fees, costs, and expenses associated with representation through the Defendant's flawed OVDP," which Plaintiffs assert can only be recovered "in an APA action." *See* Pls' Resp. 19. The Court should disregard these assertions.

Plaintiffs did not allege these harms in their Amended Complaint. And because Plaintiffs cannot amend their complaint in a Response brief, the Court should disregard them.  Moreover, it would be futile to grant leave to amend because these alleged harms do not cure the deficiencies in Plaintiffs' APA claims.  Plaintiffs could not in good faith allege that the IRS deemed them "willful tax cheats" because, as previously discussed, the denial of plaintiffs' request for Transitional Treatment cannot be equated with a "determination" that the plaintiffs' disclosure violations were willful. At most, the IRS determined that there was some information inconsistent with plaintiffs' self-certification of non-willful conduct.  And even assuming that the IRS had "labeled" plaintiffs as asserted, the APA does not provide relief from vaguely alleged stigma unless there are direct and appreciable legal consequences of such label.  *See generally Parsons v. United States Dep't of Justice*, 878 F.3d 162, 169 (6th Cir. 2017) ("Juggalo gang designation does not result in legal consequences

because it does not impose liability, determine legal rights or obligations, or mandate, bind, or limit other government actors.").  Moreover, Plaintiffs cannot recover money damages in the form of attorney's fees, costs, and expenses associated with participating in OVDP in an APA suit.

### iii.  The Transition Rules are not "final agency action"

The APA only provides review of "final agency action." 5 U.S.C. § 704.  "As a general matter, two conditions must be satisfied for agency action to be 'final': First, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted).

The government's opening brief established that Plaintiffs could not challenge the Transition Rules under the APA because although they marked the "consummation of the agency's decisionmaking process," the Transition Rules did not determine "rights or obligations . . . from which "legal consequences will flow."  Gov't Mot. at *28-29 (quoting *Bennett*, 520 U.S. 154, 177–78 (1997)). For example, the Transition Rules plainly did not guarantee OVDP participants that they would receive transitional treatment, nor did they dictate that the IRS would (or would not) assess certain amounts for particular taxpayers.

Plaintiffs respond that "[t]he Transition Rules are a 'consummation' of the IRS's decision making process because it is determining whether or not a foreign account holder acted 'willfully' or 'non willfully' for purposes of assessing a penalty through the OVDP. The legal 'rights or obligations' are impacted. This is because the OVDP participants are assessed a penalty under Title 26 of the United States Code which they must satisfy in full." Pls' Resp. at *20.

The Court should reject Plaintiffs' argument, which constitutes a futile attempt to transform their facial challenge to the Transition Rules into an APA challenge to the denial of transition

treatment.  First (as described above), Plaintiffs misstate what the Amended Complaint alleges to

have happened.  The IRS did not determine "whether or not a foreign account holder acted

'willfully.'" At most, the IRS determined that there was *some* information that was inconsistent with

the Plaintiffs' self-certification of non-willfulness, such that the IRS decided to resolve Plaintiffs'

potential civil liability through OVDP (in the normal course) or through an administrative

examination.

Second, although the IRS denied Plaintiffs' request for Transitional Treatment, that denial

did not result in the IRS assessing the Plaintiffs for unpaid taxes or penalties.  There were no legal

consequences of the IRS's decision. Plaintiffs remained free to execute a Closing Agreement (which

*did* have legal consequences) or to opt-out of OVDP to undergo an administrative examination

(which *would* have had legal consequences).

### iv.  Plaintiffs concede that there are no judicially manageable standards to review the IRS's decision to establish terms and procedures for its settlement programs

The government's opening brief explained that the IRS's decision to establish terms and

procedures for OVDP (including the procedures for allowing participants to "transition" to a lower

penalty structure) is not subject to APA review because the IRS possesses virtually unfettered

discretion to settle tax cases.  *See* Gov't Mot. at *23-28 (agency action "committed to agency

discretion by law" not subject to APA review).  Consistent with the analysis required by *Heckler v.

Chaney*, 470 U.S. 821, 830, 834 (1985) and *Ass'n of Irritated Residents v. E.P.A.*, 494 F.3d 1027, 1033

(D.C. Cir. 2007), the government analyzed the statutes and regulations governing IRS settlements to

demonstrate that they contained no "judicially manageable standards" by which a court could review the Transition Rules.[8]

Plaintiffs apparently concede that there are no standards with which to evaluate the substantive correctness of the IRS's decision to create its offshore settlement initiatives or to publish any particular procedures or instructions thereunder. Pls' Resp. at *23 ("The Defendants are correct in stating that there is no law to apply to the [T]ransition Rules."). Accordingly, the Court should hold that Plaintiffs cannot state a claim under the APA because the decision has been committed to agency discretion by law.

### v.  Plaintiffs have not meaningfully distinguished *Irritated Residents*

The government's opening brief explained that Plaintiffs' APA challenge to the Transition Rules was foreclosed by the D.C. Circuit's decision in *Ass'n of Irritated Residents*, 494 F.3d 1027. In that case, the D.C. Circuit held that the announcement of procedures and terms of an EPA settlement initiative constituted a presumptively non-reviewable enforcement action, rather than rulemaking.

Plaintiffs' response fails to meaningfully address *Ass'n of Irritated Residents*. Instead, Plaintiffs focus on distinguishing the case on grounds that were not central to the D.C. Circuit's decision.  For example, Plaintiffs (accurately) assert that unlike the IRS, "the EPA sought and considered public input." Resp. *24-25. This, however, is a distinction without a difference. The D.C. Circuit, over the course of three pages of the majority opinion, explained why the challenged agency action

---

[8] Although the APA would presumably permit a suit raising a colorable constitutional claims (*e.g.*, a settlement program that was unavailable to members of a protected-class), OVDP plainly is not such a program and the Amended Complaint makes no such allegations. *See generally Royer v. Fed. Bureau of Prisons*, 933 F. Supp. 2d 170, 182 (D.D.C. 2013).  And as explained elsewhere, Plaintiffs Fifth Amendment claim (Count III) fails as a matter of law because Plaintiffs do not identify a protected property or liberty interest invaded by the IRS's actions in this case.

constituted enforcement activity rather than rulemaking. *See Ass'n Irritated Residents*, 494 F.3d at 1033–35 (noting that "EPA has not bound itself in a way that reflects 'cabining' of its prosecutorial discretion because it imposed no limit on its general enforcement discretion if the substantive statutory standards are violated"); *but see Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1906 (2020).[9]  Nowhere in this discussion of whether the EPA engaged in rulemaking did the Court so much as *mention* the fact that EPA had solicited public comment on its settlement initiative. Rather, the D.C. Circuit looked to the *effect* of the challenged agency action to determine whether it constituted rulemaking subject to the notice-and-comment requirement.

The Transition Rules and the EPA's settlement program are similar in that neither "cabined" prosecutorial discretion.  Indeed, the IRS did not take "final action" to actually determine "rights or obligations . . . from which 'legal consequences will flow'" until it executed a Closing Agreement. *See Bennett*, 520 U.S. at 177–78 (citations omitted). Prior to that time, there were no "direct and appreciable legal consequences," *U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807, 1814, 195 L. Ed. 2d 77 (2016).  Accordingly, the Court should hold that the IRS's publication of the Transition Rules FAQ was a non-final agency action, which was an otherwise presumptively unreviewable act of enforcement discretion.

---

[9] *Regents* does not overrule *Irritated Residents* or control this case. Unlike the deferred action program (which benefited those without lawful status to remain in the United States), the EPA program was designed to assist *the EPA* (by developing standards while achieving compliance in a cost-effective manner), and Transition Rules were created to benefit *the IRS* (by reducing resources expended auditing non-willful taxpayers who had been opting-out of OVDP). Moreover, *Regents* involved the *rescission* of a non-enforcement policy, whereas Plaintiffs in both *Irritated Residents* and this case challenged the terms of the agency's leniency program. Finally, the *Regents* decision focused, to a large degree, on Plaintiffs detrimental reliance. Yet here, the Transition Rules did not induce anyone (including Robert Harrison and Juliette Sprinkle) to disclose their foreign accounts, because by definition anyone eligible for Transitional Treatment had already disclosed their foreign accounts through OVDP.

### d.  Plaintiffs have not identified a property interest to support their Fifth Amendment Claim

The government's opening brief established that to state a claim for relief, Plaintiffs were obligated to "identify a liberty or property interest upon which the IRS has intruded such that the Clause's protections are triggered." *Marciano v. Shulman*, 795 F. Supp. 2d 35, 41 (D.D.C. 2011); *see also NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 41 (D.C. Cir. 2015). Because plaintiffs failed to articulate such an interest, the government contended that the Amended Complaint failed to state a claim.

In response, Plaintiffs assert that the government's motion "misses the point."  Plaintiffs further contend that, "[t]he Plaintiffs suffered an injury because the IRS arbitrarily and capriciously determined they willfully omitted a UBS account from their tax returns. This resulted in the Plaintiffs having been labeled as willful tax cheats, paying lawyer fees to defend themselves from the Defendant, and needlessly being assessed a large penalty through the OVDP." Pls' Resp. at *19.

Plaintiffs' response does not cure their failure to identify a specific property interest to support their Fifth Amendment claim. And as the government previously explained, Plaintiffs have not alleged (and could not support such an allegation) that they had a cognizable property interest in a reduced penalty structure under the Transitional Rules. Accordingly, the Court should dismiss Count IV.

## IV.    CONCLUSION

The Court should grant the government's motion to dismiss, and hold that (1) Plaintiffs cannot state a claim for relief because they voluntarily waived the claims at issue here by signing their Closing Agreement; (2) Plaintiffs have not alleged the jurisdictional facts necessary to state a refund claim; (3) Plaintiffs cannot state a claim for relief under the APA because (but for their waiver) a refund action would provide an adequate remedy in court, the Transition Rules are not final agency action subject to APA review, and the Transition Rules constitute a presumptively non-

17

reviewable exercise of enforcement discretion.  The Court should also dismiss Plaintiffs' due process

claim because of Plaintiffs' failure to identify any cognizable property interest in having their case

resolved through Transitional Treatment, and because the availability of an administrative exam and

post-assessment judicial review is adequate process for purposes of the Fifth Amendment's Due

Process Clause.

DATE: September 4, 2020

Respectfully submitted

MICHAEL R. SHERWIN
Acting United States Attorney

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

_____
RICHARD J. HAGERMAN
Trial Attorney
United States Department of Justice
Tax Division
202-598-7827
555 4th Street
Suite 6836
Washington, D.C. 20044
Richard.J.Hagerman@usdoj.gov

18